UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CERVANTES GONZALEZ,<br><br>    Petitioner,<br><br>    v.<br><br>S. FRAUENHEIM, Warden,<br><br>    Respondent. | No. 1:16-cv-01002-DAD-JLT (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[TWENTY-ONE DAY OBJECTION DEADLINE]** |

Petitioner is currently serving a sentence of 41 years plus 185 years-to-life in state prison for his conviction of multiple sex offenses against a 10 year old child and domestic violence against a cohabitant. He has filed the instant habeas action challenging the conviction and sentence. As discussed below, the Court finds the claims to be without merit and recommends the petition be **DENIED.**

**I.    PROCEDURAL HISTORY**

Petitioner was convicted in the Kings County Superior Court on October 4, 2013, of: sexual penetration of M.M., a 10–year–old (Cal. Pen. Code § 288.7(b)), (counts 1, 5, 7, 15, and 19); forcible sexual penetration of M.M. (Cal. Penal Code § 269(a)(5)), (count 2); forcible oral copulation of M.M. (Cal. Penal Code § 269(a)(4)) ,(counts 6, 8, 20); committing a lewd act upon M.M. (Cal. Penal Code § 288(b)(1)), (counts 11, 13, 17, 23); sexual intercourse with M.M. (Cal. Penal Code § 288.7(a)), (count 21); rape of M.M. (Cal. Penal Code § 269(a)(1)), (count 22); and

domestic violence against V.H., a cohabitant (Cal. Penal Code § 273.5(a)), (count 25). People v. Cervantes-Gonzalez, 2016 WL 402972, at *1 (Cal. Ct. App. Feb. 2, 2016). He was sentenced to 41 years plus 185 years-to-life in state prison. Id.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). The Fifth DCA affirmed the judgment on February 2, 2016. Id. The appellate court reversed the prison term on count 1 and remanded the matter for resentencing on that count. Id. In all other, respects the judgment was affirmed. Id. Petitioner filed a petition for review in the California Supreme Court, and the petition was summarily denied on April 27, 2016. (LD[1] 25, 26.)

On May 27, 2016, Petitioner filed the instant petition for writ of habeas corpus in this Court. (Doc. No. 1.) Respondent filed an answer on January 3, 2017. (Doc. No. 28.) Petitioner did not file a traverse.

## II.    FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[2]:

> In March of 2012, defendant moved in with his girlfriend V.H. and her three daughters, including 10–year–old M.M.
>
> On July 31, 2012, V.H. discovered defendant in M.M.'s bedroom, on top of M.M., with his pants and underwear pulled down, kissing M.M.'s neck while his hand covered her mouth. M.M. was naked from the waist down. V.H. yelled, "What are you doing?" Defendant laughed as he pulled up his pants and underwear.
>
> V.H. attempted to run outside to get help but defendant grabbed her by her hair, pulled her back inside the house, pushed her up against a wall, and began to choke her. M.M. asked defendant, "'What are you doing?'" Defendant let go. V.H. ran outside and began to vomit blood.
>
> Defendant admitted to V.H. he had digitally penetrated and orally copulated M.M. He told V.H., "'I used my mouth on the little girl's [vagina],'" and claimed 10–year–old M.M. had provoked him. He also stated, "'I'm a man and I am going to do what men do, she wanted it.'"
>
> V.H. took M.M. and her other daughters to a nearby clinic, but defendant began following them. When he went inside a store to purchase beer, V.H. rushed the children into the clinic where an ambulance transported M.M. to the hospital.

---

[1] "LD" refers to the documents lodged by Respondent with the answer.

[2] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

2

Forensic nurse specialist Jennifer Pacheco performed a forensic examination on M.M. She observed a faint tear toward the bottom interior of M.M.'s vagina and noted M.M.'s vagina appeared to be very tender.

M.M. was interviewed at the multidisciplinary interview center, a facility where child victims of sexual abuse are interviewed by trained specialists. During the interview, she described multiple sexual offenses defendant committed against her during the time he had been living with her family.

At trial, M.M. testified defendant kissed her on her lips, touched her breasts, digitally penetrated her, orally copulated her, forcibly used her head and hand to touch his penis, and sexually penetrated her. Defendant told M.M. if she told V.H. about the incidents, he would kill her mother and sisters.

*Defendant's Miranda Warning and Video-recorded Statements*

On July 31, 2012, defendant was arrested and questioned by police. Officer Juan Hernandez of the Hanford Police Department, a certified Spanish translator, read defendant his rights in Spanish pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

The record provides the following English language translation of Hernandez's *Miranda* admonition:

> "Hernandez: You have the ... right to remain silent without doing an (inaudible). [¶] ... [¶]
>
> "Hernandez: (inaudible) You're here because you are under arrest [¶] ... [¶]
>
> "Hernandez: Everything you say can be against you in court [¶] ... [¶]
>
> "Hernandez: You have the right to have an attorney present with you here when [¶] ... [¶]
>
> "Hernandez: And if you can't ... get an attorney there is an attorney they will give you. Having these rights we are going to ask you a few questions."

Defendant acknowledged he understood his rights and Hanford Police Detective Cory Mathews began to question him.

Defendant had been living at V.H.'s apartment with her and her three daughters for the past four months. The night before the incident, he and V.H. had been drinking. Around 6:00 a.m. the next morning, defendant claimed M.M. kissed defendant on the mouth. She led him by the hand into the kitchen where she kissed him again, put his hand on her breast, and orally copulated him.

Defendant claimed he touched M.M.'s vagina and she touched his penis. M.M. went to her room to lie down and defendant went outside to smoke a cigarette. When he finished, he went into M.M.'s room where he kissed her, touched and licked her breasts, and orally copulated her. Defendant admitted he used his exposed penis to touch M.M.'s vagina, but he denied penetrating her. V.H. then walked in and caught defendant with his pants down.

On August 30, 2013, during defendant's trial, the court addressed the parties

3

regarding an issue raised by defendant's Spanish language interpreter, Jim Mena. The trial judge explained Mena approached him with a concern about whether defendant had understood his rights. Based on Mena's interpretation, it is unlikely defendant understood his rights.

Defense counsel did not object or take any further action in response to Mena's concern.

*Defendant's Plea Offer*

On August 22, 2012, defendant formally waived his right to a preliminary hearing. Court-appointed defense counsel Laurence Myer informed the trial court defendant waived his right to a preliminary hearing to lock in an offer by the prosecutor of 30 years to life. The offer was to remain open until the pretrial conference.

On November 28, 2012, the first pretrial conference was held. Court-appointed defense counsel Brian Gupton represented defendant. Gupton informed the trial court the offer was 45 years to life. Defendant rejected the offer and the court continued his trial.

On April 12, 2013, a second pretrial conference was held. Defendant was represented by Christopher Martens. Martens advised the court a determinate offer was made in the neighborhood of 30 years to life, but defendant had rejected it. The trial readiness conference date was confirmed.

On May 15, 2013, a substitution of counsel proceeding was held. Defendant was represented by Justin Shimizu. During the proceeding, the prosecutor stated the plea offer was 45 years to life. Defendant did not respond to the offer. The court rejected Shimizu's request for a continuance of defendant's trial.

On June 21, 2013, a third pretrial conference was held. Shimizu, representing defendant at the conference, confirmed the prosecutor made an offer of 30 years to life, but advised the court defendant had rejected the offer. The matter was set for trial readiness.

On August 26, 2013, a hearing was held pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). Defendant was represented by Christopher Martens at the time of the hearing. Defendant sought new counsel on various grounds, one of which was based on the claim he was initially offered a plea deal of 30 years which was inexplicably changed to 40 years.

The court asked Martens about the prosecution's offer of 30 years to life which was to remain open until the pretrial conference. Martens advised the court defendant rejected the offer "numerous times," and explained "[t]here's never been an offer that's not been a life sentence, and so [defendant] has been unwilling to accept a plea that involved a life sentence so that's why we're here at trial." The court denied defendant's motion and his trial commenced.

Cervantes-Gonzalez, 2016 WL 402972, at *1–3.

### III. DISCUSSION

    A.    <u>Jurisdiction</u>

Relief by way of a petition for writ of habeas corpus extends to a person in custody

4

pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.  Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable

application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C. Review of Claims

The instant petition presents the following grounds for relief: 1) Petitioner asks whether the English translation of a statement in a foreign language controls when the prosecutor's translation was not verbatim, the prosecutor's translator provided no certification of accuracy, and

the court-certified Spanish language interpreter indicated based on his interpretation that it was unlikely Petitioner understood his rights; 2) The trial court erroneously admitted Petitioner's video-recorded statement in violation of Miranda v. Arizona, 384 U.S. 436 (1966); 3) Defense counsel rendered ineffective assistance by failing to suppress Petitioner's video-recorded statement; 4) The prosecution breached the plea bargain; 5) Defense counsel rendered ineffective assistance during the plea bargain; and 6) The matter should be remanded for an evidentiary hearing.

### 1. Evidentiary Issue Concerning Translation of Statement

Petitioner asks whether the English translation of a statement in a foreign language controls when the prosecutor's translation was not verbatim, the prosecutor's translator provided no certification of accuracy, and the court-certified Spanish language interpreter indicated based on his interpretation that it was unlikely Petitioner understood his rights. This claim was first presented in a petition for review to the California Supreme Court. Respondent argues that the claim is unexhausted and does not present a federal question.

Respondent is correct that the claim is unexhausted. Petitioner did not raise the claim before the appellate court on direct review. He first raised it on discretionary review to the California Supreme Court. The California Supreme Court summarily denied the petition. Therefore it is unknown whether the claim was addressed. A claim first raised in an application for discretionary review to the highest court is considered unexhausted. Casey v. Moore, 386 F.3d 896, 918 (9th Cir. 2004). For this reason, the claim is unexhausted. Nevertheless, it should be denied as it is without merit. 28 U.S.C. § 2254(b)(2).

Respondent is also correct that the claim fails to present a federal question, since Petitioner is only seeking clarification of state law. It is well-settled that federal habeas relief is not available to state prisoners challenging state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) ("alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings). Here, Petitioner challenges the state court's interpretation and application of state evidentiary law. Such a claim does not give

rise to a federal question cognizable on federal habeas review. Id.; Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). Thus, the claim is not cognizable on federal habeas and should be rejected.

2. Admission of Video-Recorded Statement

Petitioner alleges that the admission of his video-recorded statement violated his Fifth Amendment Miranda rights. He claims a Spanish-speaking officer incorrectly translated and advised him of his Miranda warnings prior to questioning.

*a. State Court Review*

Petitioner raised this claim on direct review. In the last reasoned decision, the Fifth DCA rejected the claim as follows:

*Defendant's Miranda Warning*

Defendant claims a Spanish-speaking officer failed to properly translate and advise him of his *Miranda* rights during police questioning. During police questioning, defendant made inculpatory statements, admitting to perpetrating multiple sexual offenses against a minor. He argues if this court finds his claim was forfeited on appeal, defense counsel rendered ineffective assistance of counsel for failing to object to admission of the statements at trial. We reject both arguments.

In his opening brief, defendant scrutinizes the *Miranda* warning issued by Officer Hernandez as if construing a legal document. He essentially argues the transcript of his tape-recorded interrogation by police contains an improper translation of the *Miranda* warning actually administered to him and he was not properly advised of his right to remain silent and his right to an attorney.

Where there is a conflict between a statement recorded in a foreign language and an English language translation of the statement, the English language translation controls and is evidence of what was said. (*People v. Cabrera* (1991) 230 Cal.App.3d 300, 304.) As such, it is the record that controls whether defendant was properly advised of his *Miranda* rights, not defendant's interpretation of the video. According to the record, defendant was admonished as follows: (1) you have the right to remain silent; (2) everything you say can be used against you in court; (3) you have the right to have an attorney present; (4) and if you can't get an attorney, one will be given to you.

We conclude defendant was properly advised of his right to remain silent and that his statements could be used against him in court. Although the warning does not indicate defendant's statements could and *would* be used against him, the warning was sufficient as phrased. A *Miranda* warning need not include specific and exact language to properly convey to a suspect his or her rights. (*Duckworth v. Eagan* (1989) 492 U.S. 195, 203.) The relevant inquiry is simply whether the warning *reasonably conveys* those rights. (*Ibid*.)

8

> Moreover, this same warning was found to be sufficient in *People v. Johnson* (2010) 183 Cal.App.4th 253, 292 ([*Miranda* warning proper where deputies advised defendant "her statements could be used in court but did not also state they 'will' be used in a court"].) We conclude the admonishment given to defendant reasonably conveyed he had the right to remain silent and his statements could be used against him in court.
>
> Defendant also asserts his right to an attorney was not properly conveyed to him. He specifically argues the *Miranda* warning given did not indicate he had the right to have an attorney present before and during questioning and that if he could not afford an attorney, one would be appointed to him. A *Miranda* warning must convey a suspect has the right to an attorney present *before* and *during* questioning, even if the suspect is indigent and cannot afford to hire one. (*Duckworth v. Eagan, supra*, 492 U.S. at p. 204; *People v. Lujan* (2001) 92 Cal.App.4th 1389, 1399.)
>
> We need not resolve whether defendant's *Miranda* rights were, indeed, lost in translation, because defense counsel failed to object below and, as a result, defendant's claim is forfeited on appeal. It is well-settled that to preserve a *Miranda* claim on appeal, a defendant must make an objection at the trial level. (*People v. Jackson* (1989) 49 Cal.3d 1170, 1188; *People v. Milner* (1988) 45 Cal.3d 227, 236; *People v. Rogers* (1978) 21 Cal.3d 542, 548.) A failure to timely object will render the issue forfeited upon review. (Evid. Code, § 353.)
>
> Not only did defense counsel here fail to object to the admission of defendant's tape-recorded statements, he used the statements in closing argument to assert defendant did not use force, fear, duress, or menace to accomplish the charged offenses, and he did not sexually penetrate M.M. Plainly, defendant cannot now argue introduction of the statements was error.

Cervantes-Gonzalez, 2016 WL 402972, at *3–4.

### b. Procedural Default

As an initial matter, Respondent contends that the claim is procedurally barred because no contemporaneous objection was made at trial. The Court agrees.

A federal court will not review a claim of federal constitutional error raised by a state habeas petitioner if the state court determination of the same issue "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). This rule also applies when the state court's determination is based on the petitioner's failure to comply with procedural requirements, so long as the procedural rule is an adequate and independent basis for the denial of relief. Id. at 730. For the bar to be "adequate," it must be "clear, consistently applied, and well-established at the time of the [ ] purported default." Fields v. Calderon, 125 F.3d 757, 762 (9th Cir. 1997). For the bar to be "independent," it must not be "interwoven with the federal law." Michigan v. Long, 463 U.S.

1032, 1040-41 (1983). If an issue is procedurally defaulted, a federal court may not consider it unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 749-50.

In Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002), the Ninth Circuit held that California's contemporaneous objection doctrine is clear, well-established, and has been consistently applied when a party has failed to make any objection to the admission of evidence. Likewise, in Vansickel v. White, 166 F.3d 953 (9th Cir. 1999), the Ninth Circuit held that the contemporaneous objection bar is an adequate and independent state procedural rule. In this case, Petitioner did not object to the admission of his video-recorded statement. Further, Petitioner has not demonstrated cause for the default or actual prejudice resulting therefrom. Thus, the claim is procedurally defaulted.

    *c. Federal Standard*

The Fifth Amendment provides that "no person shall be compelled in any criminal case to be a witness against himself." A suspect subject to custodial interrogation has a Fifth Amendment right to consult with an attorney, and the police must explain this right prior to questioning. Miranda v. Arizona, 384 U.S. 436, 469–73 (1966). In Miranda, the United States Supreme Court held that "[t]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. To this end, custodial interrogation must be preceded by advice to the potential defendant that he or she has the right to consult with a lawyer, the right to remain silent and that anything stated can be used in evidence against him or her. Id. at 473–74. These procedural requirements are designed "to protect people against the coercive nature of custodial interrogations." DeWeaver v. Runnels, 556 F.3d 995, 1000 (9th Cir. 2009).

Error in admitting statements obtained in violation of Miranda is deemed harmless for purposes of federal habeas review unless the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993);

Ghent v. Woodford, 279 F.3d 1121, 1126 (9th Cir. 2002).

      *d. Analysis*

Petitioner first alleges that he was not properly advised of his right to remain silent. As noted above, the state court addressed this claim and cited relevant Supreme Court authority in Duckworth v. Eagan, 492 U.S. 195 (1989). The Fifth DCA noted that in Duckworth, the Supreme Court held that "'the rigidity of Miranda [does not] exten[d] to the precise formulation of the warnings given a criminal defendant' and that 'no talismanic incantation [is] required to satisfy its strictures.'" Id. at 202-03 (quoting California v. Prysock, 453 U.S. 355, 359 (1981)). The Fifth DCA noted that the warnings need only "reasonably 'conve[y] to [a suspect] his rights as required by Miranda.'" Id. at 203 (quoting Prysock, 453 U.S. at 361.) The record shows that Petitioner was advised of his right to remain silent. Therefore, Petitioner fails to demonstrate that the state court rejection of his claim was contrary to or an unreasonable application of Supreme Court precedent.

In addition, he fails to demonstrate that the state court denial was an unreasonable interpretation of the facts. He points to various words in the trial transcription and alleges these words were translated incorrectly. However, as pointed out by Respondent, it is the tape that was evidence, not the trial transcript. The transcript noted that parts of the statement were inaudible. The video-recorded interview, however, showed that Officer Hernandez, who was a certified translator with the Hanford Police Department, read Petitioner his rights from a Miranda warning card. (LD 11 at 1223, 1226.) Petitioner fails to demonstrate that Hernandez read the card incorrectly, or that he did not understand his rights as read to him. In fact, Petitioner affirmatively stated "uh huh" and "ok" when asked if he understood his rights. (LD 2 at 350; LD 3 at 11.) Therefore, the claim is without merit and should be denied.

Petitioner next alleges he was not properly given his Miranda warning that he was entitled to an attorney before and during his interrogation. As noted above, precise language is not required; it is sufficient that a warning "reasonably convey" Petitioner his rights. Prystock, 453 U.S. at 361. As to the right to counsel, the Supreme Court has held that it is sufficient that the warnings advise the suspect that he has a right to consult with a lawyer prior to and during

11

questioning. Duckworth, 492 U.S. at 200-01. In this case, Petitioner was advised: "You have the right to have an attorney present with you here when…" at which point Petitioner responded, "Uh huh." Cervantes-Gonzalez, 2016 WL 402972, at *2. He was further told: "Having these rights we are going to ask you a few questions." Id. Since Petitioner was advised prior to questioning and affirmed that he understood he had the right to an attorney "here" at the interrogation, and that after he had been advised that he "ha[d] these rights" the officers would begin asking questions, it was not unreasonable for the state court to find he was sufficiently informed he had the right to an attorney prior to and during questioning.

Likewise, his claim that he was not clearly informed that the Government had an absolute obligation to provide an attorney if he was indigent is without merit. Officer Hernandez advised him that "if you can't um um get an attorney there is an attorney they will give you." Id. Precise words are not required so long as the language used reasonably conveys his rights. Here, it was reasonable for the state court to conclude that the Government would provide him with an attorney in the event he could not retain one.

*e. Harmless error*

In any case, the alleged errors were harmless. Apart from the video-taped confession, there was overwhelming evidence of Petitioner's guilt including the victim's testimony, the victim's mother's testimony, physical examination evidence, and a sexual abuse specialist's interview of the victim. Moreover, Petitioner's statement was the only evidence that disputed the victim's testimony that there was penetration and that the act was committed by violence, force, duress, or menace. The statement rebutted half of the charges he faced. In fact, defense counsel utilized this evidence in closing to dispute allegations that the acts had been accomplished through violence, force, duress or menace.

3. Ineffective Assistance of Counsel - Admission of Video-Recorded Statement

In a related claim, Petitioner contends his defense counsel was ineffective in failing to suppress the recorded statement.

*a. State Court Review*

Petitioner also raised this claim in the state courts on direct review. In the last reasoned

12

decision, the Fifth DCA rejected the claim as follows:

> As a fallback position, defendant argues defense counsel was ineffective for failing to object to the admission of his statements. We conclude his claim is without merit.
>
> A defendant claiming ineffective assistance of counsel in violation of his Sixth Amendment right to counsel must show (1) defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, (2) the deficient performance resulted in prejudice by depriving the defendant of a fair trial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *In re Jones* (1996) 13 Cal.4th 552, 561.) It is the defendant's burden to establish, based on the record and on the basis of facts, defense counsel was ineffective. (*People v. Mattson* (1990) 50 Cal.3d 826, 876–877.)
>
> On appeal, we look to the record to see if there is any explanation for the challenged aspects of representation. The record must affirmatively demonstrate no rational tactical purpose for the challenged omission. (*People v. Ray* (1996) 13 Cal.4th 313, 349.) Where the reasons for defense counsel's actions are not readily apparent from the record, we will not assume constitutionally inadequate representation and reverse a conviction unless the record discloses "'"no conceivable tactical purpose"'" for counsel's act or omission." (*People v. Lewis* (2001) 25 Cal.4th 610, 674–675; accord, *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.) As a result, a defense counsel's failure to object will rarely establish ineffective assistance of counsel. (*People v. Avena* (1996) 13 Cal.4th 394, 444–445.)
>
> The Attorney General argues defense counsel's failure to object was tactical: defense counsel permitted defendant's statements to be used in his closing argument without exposing defendant to cross-examination from testifying in his own defense. In his closing argument, defense counsel argued defendant did not use force, fear, duress, or menace in the commission of the charged offenses, and he asserted the statements were evidence of the fact defendant did not sexually penetrate M.M.:
>
>> "Now, why you have a lesser included [offense is] because [defendant] gave a statement to the police. It was recorded on video, you were able to watch it, and you were able to hear or read a translation of his statement. And in his statement he gave a very open, full and complete statement of what happened. In his statement what he told you is that he did not have sexual intercourse ... with MM. What he told you, what he told the police and what you heard was that he rubbed his part on her part. And that's why you have the lesser included, because the testimony of any one witness can prove any fact in this case, and you heard testimony through the video that that's what happened."
>
> The use of force, fear, duress, and menace, in addition to the allegation defendant sexually penetrated M.M., formed the basis of half of the charges against defendant. If defendant's statements were accepted by the jury, he would have faced a considerably reduced prison term compared to his maximum exposure. Thus, it is readily apparent from the record defense counsel had a reasonable and valid tactical basis for failing to object to the admission of defendant's tape-recorded statements.
>
> Defendant's claim the trial court admitted his tape-recorded statements in violation

13

of his *Miranda* rights is forfeited. In addition, we find no merit to his claim of ineffective assistance of counsel. Consequently, we need not remand this case to the trial court for further determination of whether a *Miranda* violation occurred, as defendant urges us to do.

Cervantes-Gonzalez, 2016 WL 402972, at *4–5.

### b. Federal Standard

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was

erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

  c. *Analysis*

The state court determined that defense counsel had a valid tactical reason for not objecting to the admission of the video-recorded interview. The evidence against Petitioner was overwhelming. However, as previously discussed, Petitioner's statements in the interview rebutted half of the charges against him. The court noted that defense counsel used the statement in his closing to argue that Petitioner never used force, fear, duress, or menace to accomplish the charged offenses. Had the jury believed the argument, Petitioner's prison term would have been reduced. Thus, defense counsel was able to put forth this evidence without exposing Petitioner to cross-examination. A fair-minded jurist would agree that the state court's determination was reasonable. The claim should be denied.

  4. Breach of Plea Bargain

Petitioner contends the prosecutor breached the plea agreement in violation of his due process rights. He asserts the prosecutor had promised to keep an offer of 30 years to life open until the pretrial conference if he agreed to waive his right to a preliminary hearing.

  a. *State Court Review*

This claim was presented on direct review to the state courts. In the last reasoned decision, the Fifth DCA denied the claim as follows:

> *Defendant's Claim of Prosecutorial Breach Is Without Merit*
>
> In defendant's final claim on appeal, he argues the prosecution breached a plea agreement on November 28, 2012, and May 15, 2013, to keep an offer of 30 years to life open. Defendant agreed to waive his right to a preliminary hearing provided an offer of 30 years to life remained open until his pretrial conference. Defendant asserts if his claim was forfeited on appeal, defense counsel rendered ineffective assistance of counsel. We find no merit to either contention.

15

> On the record before us, defendant has failed to establish prosecutorial breach. Although it appears the prosecution's offer of 30 years to life was changed to 45 years to life at defendant's first pretrial conference on November 28, 2012, defendant concedes he was offered a deal of 30 years to life at both his second and third pretrial conferences, which he rejected. As defense counsel Martens explained to the court, defendant rejected the offer of 30 years to life "numerous times," unwilling to accept a plea that involved a life sentence. Accordingly, we reject defendant's claim of prosecutorial breach.

Cervantes-Gonzalez, 2016 WL 402972, at *5.

### b. Federal Standard and Analysis

In Santobello v. New York, 404 U.S. 257, 262 (1971), the Supreme Court held that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Plea agreements are contractual in nature and are to be construed under ordinary contractual interpretation of state law. Doe v. Harris, 640 F.3d 972, 975 (9th Cir.2011); Buckley v. Terhune, 441 F.3d 688, 695 (9th Cir.2006) (en banc). This rule has been regularly and consistently invoked and applied in the Ninth Circuit. See, e.g., United States v. Camper, 66 F.3d 229, 232 (9th Cir.1995); United States v. De La Fuente, 8 F.3d 1333, 1340 (9th Cir.1993); United States v. Arnett, 628 F.2d 1162, 1164 (9th Cir.1979).

However, this case does not involve a plea bargain because Petitioner never pled in exchange for a promise or agreement by the prosecution. Petitioner alleges rather that the prosecutor failed to keep a plea offer *open*, but Respondent is correct that no Supreme Court case has addressed whether a prosecutor is required to keep an offer *open* in exchange for a waiver of a preliminary hearing. As further noted by Respondent, a federal court may not extend a rule to a new context beyond that which was addressed by the Supreme Court. Glebe v. Frost, __ U.S. __, 135 S.Ct. 429, 431 (2014). Therefore, Petitioner fails to demonstrate that the state court determination was contrary to or an unreasonable application of Supreme Court precedent.

In addition, the record shows that the state court's determination was a reasonable interpretation of the facts. As noted by the court, although Petitioner was offered a term of 45 years to life at the first pretrial conference, he was offered a term of 30 years to life at his second and third pretrial conferences, and he denied the deal on both occasions. (LD 24 at 10; LD 5 at

103-04; LD 6 at 201-02; LD 8 at 403; LD 21 at 21-22.) At the <u>Marsden</u> hearing, defense counsel advised the court that Petitioner had been offered deals of 30 years to life on numerous occasions, but Petitioner rejected them because he was not willing to accept a plea involving a life sentence. (LD 24 at 22.) Given that Petitioner twice rejected deals for 30 years to life, the state court reasonably rejected his claim of a plea bargain violation. The claim should be rejected

     5.     <u>Ineffective Assistance of Counsel – Breach of Plea Bargain</u>

Petitioner also faults defense counsel for failing to communicate the plea offer of 30 years to life on two occasions, and for failing to object to the offer of 45 years to life.

     *a. State Court Review*

Petitioner raised this claim to the state court on direct review. In the last reasoned decision, the Fifth DCA rejected the claim as follows:

> Defendant also asserts defense counsel rendered ineffective assistance of counsel by failing to communicate the prosecution's offer of 30 years to life to him on two occasions and by failing to object to the subsequent offer of 45 years to life. Here, again, defendant has failed to prove incompetence of counsel.
>
> "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." (*Missouri v. Frye* (2012) —— U.S. —— [132 S.Ct. 1399, 1409].) Even assuming defense counsel erred by failing to object to the prosecution's offers of 45 years to life on November 28, 2012, and May 15, 2013, nothing in the record supports defendant's assertion he would have accepted a plea of 30 years to life. Defendant concedes he was presented with the prosecution's offer of 30 years to life on April 12, 2012, and June 21, 2012, but rejected it. Additionally, defense counsel Martens advised the court defendant rejected the offer because he was unwilling to accept a plea that involved a life sentence. Thus, defendant cannot establish a reasonable probability he would have accepted the offer of 30 years to life.
>
> Defendant has failed to prove he received ineffective assistance of counsel. Because we find no ineffective assistance of counsel, we also deny his request to remand the matter for an evidentiary hearing on the issue.

<u>Cervantes-Gonzalez</u>, 2016 WL 402972, at *5–6.

     *b. Analysis*

The standard for ineffective assistance of counsel is set forth above. Petitioner fails to show any ineffectiveness on the part of defense counsel. There is no support for his claim that counsel failed to communicate offers of 30 years to life. In fact, as noted above, the record shows

Petitioner rejected offers of 30 years to life on numerous occasions because he was unwilling to accept a term involving a life sentence. Further, he concedes that he was twice offered and rejected a term of 30 years to life on April 12, 2012, and June 21, 2012. (LD 21 at 21-22.) Given the record, Petitioner fails to show that he would have accepted a term of 30 years to life. A fair-minded jurist could agree with the state court's rejection of Petitioner's ineffective assistance of counsel claim.

      6.      <u>Evidentiary Hearing</u>

Last, Petitioner argues that he should be given an evidentiary hearing with respect to Grounds 2-5. This claim was also presented to the state courts and denied.

An evidentiary hearing is unnecessary when the claim can be resolved on the existing record. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011). As discussed above, none of Petitioner's claims survive AEDPA review on the existing record. An evidentiary hearing is not warranted in this case.

**IV.    RECOMMENDATION**

Accordingly, the Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED** with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

///

///

///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: __**June 20, 2017**__            __**/s/ Jennifer L. Thurston**__
                                                                      UNITED STATES MAGISTRATE JUDGE